(R.D. 11705)

Mitchell Camera Corp.
Barnett Customs Brokers, Inc.    v. United States

Entry No. 209837.

(Decided May 28, 1970)

Glad & Tuttle (Edward N. Glad of counsel) for the plaintiffs.
William D. Ruckelshaus, Assistant Attorney General (Herbert P. Larsen, trial attorney), for the defendant.

Ford, Judge: This appeal for reappraisement is concerned with the question of the proper value for duty purposes of certain merchandise described as "Mark III Pan & Tilt Heads" and "Mitchell Fixings" for same. These articles are used with television cameras.

Counsel for the respective parties have stipulated that the merchandise does not appear on the final list promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, and that the proper basis of appraisement is export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

The merchandise was appraised in British pounds at the unit values set forth in column 7 of the special customs invoice, net, plus packing, which value is £250 for the Mark III pan and tilt heads and £6.17.6 for the Mitchell fixings. Plaintiffs contend the export value is £206.3.4 and £5.10.0 respectively as invoiced. While the claimed invoice value did not include the cost of packing, which is separately shown on the invoice as £14.14.0, such cost does not appear to be nor could it seriously be considered as contested since section 402(b), as amended, supra, specifically includes packing costs.

The pertinent portions of the statute involved provide as follows:

Section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

Export Value.—For the purposes of this section, the export value of imported merchandise, shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses

incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

The record herein consists of the oral testimony of one witness called on behalf of plaintiffs and an affidavit, plaintiffs' exhibit 1, as well as a picture of the pan and tilt heads, and the official papers which were received in evidence without being marked.

The affidavit, plaintiffs' exhibit 1, of Alastair Rowan MacMath contains the following pertinent facts:

(1) W. Vinten, Ltd., sells its pan and tilt heads for exportation to the United States only to Mitchell-Vinten, Inc., the plaintiff herein, by written agreement;

(2) W. Vinten, Ltd., sells the merchandise for home consumption and to third countries to whoever cares to buy;

(3) That from its current price list, W. Vinten, Ltd., offers and gives discounts to various customers who either buy in larger quantities or who do not insist on services, thus passing the savings on service on to the customer;

(4) Prices to Mitchell-Vinten, Inc., have always been a net price of 20% off of the current list price;

(5) This 20% discount has only been offered to two other customers in third countries who are original equipment manufacturers and who buy in relatively large quantities;

(6) Mitchell-Vinten, Inc., buys in quantities larger than any other customer in the export markets;

(7) No purchaser for home consumption buys in sufficient quantities to get a 20% discount. Only discounts up to 17.5% on quantities of a value of $25,000 in one single order have been granted for home consumption;

(8) There are certain fixed costs of sales for home consumption and in Europe not incurred when selling to Mitchell-Vinten, Inc.;

(9) These fixed costs are:

(a) cost of visits for demonstration at $70 per demonstration;
(b) after sales service visit free of charge represents an additional $70 cost;
(c) for 30% of home sales, a free van delivery service up to 400 miles;

(10) For a typical sale for home consumption of a unit valued at $700, these direct costs, not included in the general sales overhead, come to 20% of the purchase price;

(11) That the overall selling overhead for home consumption sales is a mark-up of 19% before the profit margin is added. If the foregoing additional selling expenses were not incurred, the average list price could be reduced by 17% and still yield the same gross profit.

The testimony of Joseph F. Lorence, an employee of both Mitchell Camera Corp. and Mitchell-Vinten, Inc., established that the latter is the exclusive sales representative in the Western Hemisphere for all products of W. Vinten, Ltd. Mitchell Camera owns 50 percent of the stock of Mitchell-Vinten, and W. Vinten, Ltd., owns the other 50 percent. The price Mitchell-Vinten pays for the pan heads does not include demonstrations, service or advertising. They are sold in the United States by Mitchell-Vinten through sales letters and advertising. They are sold to users and original equipment manufacturers. When sold to the latter category, no demonstration or repair service is given and hence they are given a 15 percent discount from the price to the users.

Based upon the record as made, there is no doubt that Mitchell-Vinten is both a related person within the purview of section 402(g) (2)(E), Tariff Act of 1930, as amended, *supra*, by virtue of the stock ownership, and a selected purchaser within the purview of section 402 (f)(1)(B) by virtue of the exclusive purchasing contract. The issue

therefore is whether the price is one which fairly reflects the market value.

When the price in the home market differs from the price for export to the United States, evidence may be adduced to establish the reason for the differential. If the evidence establishes the differential to be a result of costs incurred in the home market, which are not incurred in sales to the United States, this may be sufficient to establish a price which fairly reflects the market value under our statutory valuation provisions. *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841 (1964).

The evidence establishes in this case that sales to Mitchell-Vinten have always been at list prices, less 20 percent, and that sales in the home market are given quantity discounts up to 17 percent. There is also evidence along the line that demonstrations, service and advertising as well as free delivery and special packing in the home market increases the price therein.

Plaintiff relies upon the decision in *The American Greiner Electronic, Inc.* v. *United States*, 62 Cust. Ct. 905, R.D. 11658, 298 F. Supp. 313 (1969) (application for review pending), as standing for the proposition that an approximation may be utilized in determining whether a price fairly reflects the market value. A reading of the *Greiner* case, *supra*, clearly distinguishes the decision therein as being applicable in the instant case. In the *Greiner* case, *supra*, detailed records were presented for the purpose of establishing costs not applicable to sales to the United States. The actual percentage did not, however, come to the same figure contended. It was sufficient, however, to determine that the price did fairly reflect the market value. In the instant case, the evidence is far short of establishing actual costs not applicable to sales to the United States. A typical sale referred to in plaintiff's exhibit 1 is not sufficient since it is not based on actual sales but only hypothetical.

In addition thereto, delineation between quantity discounts and the costs referred to above is, to say the least, vague. We do not know how many sales were made in the home market or at what discounts nor do we know where the discount allowance ends and the sales expenses begin for the purpose of determining whether the price to Mitchell-Vinten fairly reflects the market value.

Plaintiffs have failed to overcome the presumption of correctness attaching to the appraised value.

I find as matters of fact:

1. That the merchandise at bar consists of twelve "Mark III Pan & Tilt Heads" and twelve "Mitchell fixings."

2. That the merchandise at bar does not appear on the final list

promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That the merchandise was appraised on the basis of export value as that value is defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That the merchandise was appraised at the unit values set forth in column 7 of the special customs invoice, net, plus packing at £250 for the pan and tilt heads and £6.17.6 for the fixings.

5. That the evidence presented by plaintiffs is insufficient to establish any values for the merchandise at bar other than the appraised values.

I conclude as to matters of law:

1. That export value, as that value is defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the appraisement of the merchandise at bar.

2. That the statutory presumption of correctness attaching to the appraised values has not been overcome by plaintiffs.

3. That the appraised values are the export values of the merchandise at bar.

Judgment will be entered accordingly.